# CASES

## ARGUED AND DETERMINED
### IN THE
# SUPREME COURT OF TENNESSEE
### FOR THE
## WESTERN DIVISION

## JACKSON, APRIL TERM, 1916.

THE STATE AND J. W. DAVIDSON *et al.* *v.* GIBSON COUNTY.

*(Jackson.* April Term, 1916.)

1. **COSTS.** Maintenance of prisoners. Liability of State. Statute.

Under Shannon's Code, secs. 7619-7622, providing that costs in felony cases shall be paid by the State, the State is liable for the maintenance in a county jail of one convicted of felony, commutation of the sentence from imprisonment in the state penitentiary not altering the case. (*Post, p.* 530.)

Acts cited and construed: Acts 1891, ch. 123.

Cases cited and approved: Woolen v. State ex. rel., 129 Tenn., 455; State ex rel. v. Cummins, 99 Tenn., 667; State v. Davidson Co., 96 Tenn., 175.

Code cited and construed: Secs. 7619-7622 (S.).

2. **COSTS.** Maintenance of prisoners. Liability of State. Statute.

Under Shannon's Code, secs. 7619-7622, providing that costs in felony cases shall be paid by the State, the State is liable for the maintenance in a county jail of one convicted of felony whose sentence has been commuted from imprisonment in the penitentiary, although the county has declared the jail build-

Davidson v. Gibson County.

ing a workhouse, using it both as a jail and a workhouse, the sheriff having charge of prisoners in the jail, and the superintendent of the workhouse of those in the workhouse. (*Post, pp.* 530, 531.)

Acts cited and construed:   Acts 1875, ch. 83.

Case cited and approved:   Durham v. State, 89 Tenn., 723.

Code cited and construed:   Sec. 7393 (S.).

3. **COSTS.**   **Maintenance of prisoners.   Liability of State.**

Misdemeanants, or felons under commutation of sentence, confined in a county jail under the jailer's care, if they are State prisoners, must be supported by the State, as between it and the county.   (*Post, p.* 531.)

4. **COSTS.**   **Maintenance of prisoners.   Liability of county.**   **Statute.**

Shannon's Code, secs. 7620-7622, including in criminal costs the maintenance of a prisoner in jail, makes payable by the county all costs of the prosecution of crimes punishable otherwise than by death or confinement in the penitentiary.   Workhouse Act (Acts 1891, ch. 123), establishing county workhouses, authorizes a workhouse sentence in felony cases.   *Held*, that a county is liable for the maintenance in its workhouse under a superintendent of State prisoners held to hard labor on commutation of sentence.   (*Post, pp.* 532-536.)

Case cited and approved:   State v. Davidson, 96 Tenn., 178.

Codes cited and construed:   Secs. 7606, 7619, 7620- 7622 (S.); Sec. 5577 (1858).

FROM GIBSON.

Appeal from Law Court at Humboldt, Gibson County.—Thos. E. Harwood, Judge.

FRANK M. THOMPSON, Attorney-General, and M. HILLSMAN TAYLOR, District Attorney-General, for appellants.

COOPER & CLARK, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This case was tried in the court below upon an agreed case made up to test the liability of Gibson county to J. W. Davidson, who is the sheriff of that county, in his capacity of superintendent of its workhouse for the board of certain persons who were convicted of felonies and served at hard labor in the workhouse under commutation of their sentences from confinement in the penitentiary to confinement in the county's workhouse.

The case was heard before the circuit judge, who passed a judgment in favor of the county, reciting that the county was not liable for the board account sued on.

The circuit judge conceived that the case was in all respects similar to that ruled in *Woolen* v. *State ex rel.,* 129 Tenn., 455, 166 S. W., 594; and therefore that he was bound by what he understood to be the holding in that case, notwithstanding his own view, which was embodied in an opinion, to the effect that the county should be held liable, were the question an open one.

The case just referred to was brought by the sheriff of Tipton county, but in his capacity of jailer to recover "a sum alleged to be due from the State for the

board of certain prisoners, who were convicted of felonies, but whose sentences had been commuted by trial juries to imprisonment in jail from imprisonment in the State penitentiary.'' Here the action is by the superintendent of a workhouse for the board of prisoners in the workhouse, there put to hard labor under the superintendent.

Are the cases on all fours? This calls for a somewhat detailed examination of our county prison system.

Quite a change was wrought in this system when the legislature passed Acts 1891, chapter 123, establishing county workhouses. That act gave the county court the power to provide a workhouse in a building separate from the jail; and, in the alternative, provided that any county not having a separate workhouse might declare its jail a workhouse, and that after such declaration the jail should be known as, and be, the county workhouse. It was provided that in such case the workhouse should be in charge of a ''superintendent.''

In the case of *State ex rel.* v. *Cummins,* 99 Tenn., 667, 42 S. W., 880, a bill was filed by the sheriff of Hamblen county to test the constitutionality of certain provisions of the act, and it was held by this court that section 10 of the act, providing that the sheriff of a county whose jail had been declared a workhouse should deliver up the jail to such superintendent, with all prisoners therein, is unconstitutional in so far as it undertakes to deprive the sheriff of the custody of prison-

134 Tenn. 34

ers who have been committed for safekeeping or of those awaiting trial, because plainly destructive of the functions and prerogatives incident to the constitutional office of sheriff. But it was also held that the jail building might still be declared a workhouse, and be both a jail and a workhouse; the sheriff to have charge of those there held in jail, and the superintendent of those there held in the workhouse. Of the former class, the sheriff is "jailer," but, if he happens also to be the superintendent of the workhouse, he is not "jailer" as respects those under his charge as such.

We therefore have three possible situations: (1) A separate workhouse wholly in charge of the superintendent; (2) a combined jail and workhouse, as above outlined; and (3) the jail without any workhouse, in counties which do not see fit to establish a workhouse in either of the above modes.

Clearly where there is only a jail proper, as described under head (3) above, the State is not freed from and the county onerated with the board, accruing after conviction, of State's prisoners. All prisoners convicted of felonies are clearly State's prisoners notwithstanding commutation to jail sentences. Code (Shannon), sections 7619-7622; *State* v. *Davidson County*, 96 Tenn., 175, 180, 33 S. W., 924; *Woolen* v. *State ex rel.* supra. The principles of the last-named case are then applicable.

When it comes to a combination jail and workhouse, (2) above, it is equally manifest that the decision in the

*Woolen Case* is apt and correct as applied to those who are held ''in jail'' by the sheriff as ''jailer.''

Code (Shannon) section 7393, provides:

''In all cases where a person is by law liable to be imprisoned in the county jail for safekeeping or punishment, confinement in the workhouse, if one be provided, may, in the discretion of the court or justice, be substituted.''

The above provision was not repealed by those of Acts 1875, chapter 83, providing that misdemeanants ''shall be confined in the county workhouse'' (*Durham* v. *State,* 89 Tenn., 723, 18 S. W., 74), and it would seem that the discretion to imprison in the jail or in the workhouse is not abrogated by the terms of the present workhouse act, whether the imprisonment be of misdemeanants or felons under commutation.

Whatever class may be in jail under the jailer's care, they, if they are such State prisoners, are to be supported by the State, as between the State and the county. And the provisions of the workhouse act of 1891 (Acts 1891, chapter 123) do not contravene the construction we give; that is, that the State must pay for the board during the safe-keeping of its prisoners after conviction, as well as before, where they are thus kept in a jail proper, or in the jailer's custody in a jail declared to be a ''workhouse,'' as above set forth. The term ''workhouse,'' when used in statute or decision, may prove misleading, unless the distinction above referred to is taken in respect to it.

Coming now to the classes (1) and (2), wherein State prisoners are held to hard labor on commutation of sentence in a workhouse under a superintendent: Is the board of such, after conviction and while so held, to be paid by the county or the State?

Code of 1858, section 5577 (Shannon, section 7606), defines criminal costs as follows:

"The costs which may be adjudged in criminal cases include all costs incident to the arrest and safe-keeping of the defendant before and after conviction, due and incident to the prosecution and conviction, and incident to the carrying of the judgment or sentence of the court into effect."

The Code, in section 5585 (Shannon, section 7619) provides that the State or the county, according to the nature of the offense, "pay the costs accrued in behalf of the State" in certain contingencies named.

Acts Extra Session 1891, chapter 22 (Shannon's Code, sections 7620-7622), defined more closely on which of the named contingencies the payor should be the State or the county, as between themselves, and this act again defines criminal costs as follows:

"What is meant by costs in the foregoing sections is all costs accruing under existing laws on behalf of the State or county, as the case may be, for the faithful prosecution and safe-keeping of the defendant, including the cost . . . of the jailer."

By the last-named act the test of liability, as between the State and the county, is placed on the grade of the offense. All costs of the prosecution of crimes punish-

able otherwise than by death or confinement in the penitentiary are made payable by the county.

The trial judge was in error in the view he expressed that nothing should be considered as "costs" under these statutes save such items as may be adjudged against a defendant, as arising in the cause against him, or, to use his language:

"The word 'costs' in these sections should not have a different meaning when applied to the State, county, or defendant. . . . Cost of board is more in the nature of expense, incurred not in a pending case, but outside of and independent of the case itself."

The learned judge may have overlooked the fact that these sections concern the division of the burden of criminal proceedings as between State and county, and that section 7622 undertakes to define "what is meant by costs," and in so doing expressly places on the county the payment of "any cost for guarding the jail to prevent mob violence, or to prevent rescue or the prisoner's escape, or for transporting to another county for safe-keeping on any account whatever," even though it is manifest that the prisoner so protected is a State prisoner held for crime. It hardly can be claimed that such "costs" are costs taxable against a defendant or are in any true sense costs of the cause.

Adhering to the construction of the statute in that regard placed thereon in the case of *Woolen* v. *State ex rel.*, supra, we have to inquire how far the present workhouse act (Acts 1891, chapter 123) changed the

burden thus fixed on the State in respect of the board of its prisoners confined in a workhouse proper, or a workhouse joint—that is, of the class (1) or (2) above.

Treating the *Woolen Case* as applicable to jail inmates as above outlined, we have but one case brought to our attention which deals with the sections of the act referred to which bears upon the particular point.`

In *State* v. *Davidson,* 96 Tenn., 178, 33 S. W., 924, it was held that, where a defendant was taxed with the cost of the cause accrued in his prosecution for a felony, and the State had paid the amount thereof to the clerk of the criminal court, it could not recover the same of the county, although the defendant had worked out the costs of the cause at hard labor in the county workhouse, upon allowance of credit as specified by law.   The court, after quoting section 12 of the workhouse act, said:.

"The claim is based upon the theory that the county, having received the benefit of his labor, must refund the costs which the State was required to pay.  We cannot concur in this contention.  The prisoner having been convicted of a felony, and being insolvent, the State became liable for the costs, notwithstanding the sentence was commuted to imprisonment in the county workhouse.  The object of the statute in authorizing a workhouse sentence in felony cases is to give the State the benefit of the county prisons for the confinement of a large class of its felony convicts, and the operation of the statute is highly beneficial to the State in relieving its main prison and in saving the

cost of transportation of prisoners. It was never within the contemplation of the legislature, in the enactment of this law, to devise a scheme by which the State should derive a revenue from the different counties of the State, by requiring them to account for the labor of these convicts, and reimburse the State for the cost of the prosecution.''

In that case it is stated there was no showing that the county had derived any benefit from the prisoner's labor over and above the cost of his keeping and maintenance. The ruling was that a collection of such costs by the county by way of labor does not render it liable to account for the amount thereof to the State. This is claimed to give support to the county's contention that all costs are to be paid by the State, notwithstanding the benefit of the inmate's labor accrues to the county. Yet the court in that case said that there was no "showing that the county had derived any benefit from his labor over and above the cost of his keeping and maintenance," thus intimating that the burden of such particular costs was the county's. Such indicated construction accords in the main with the apparent equity of the situation. The county replies, however, that it is inequitable to burden it with the board of women and infirm State prisoners who are unfit for the hard labor to be encountered in a workhouse. As to such persons it is fair to assume that the court will commit them to the jail, and not to the workhouse, in the exercise of the discretion lodged in him by section, 7393, supra.

While the matter is by no means free from doubt, and the equities are by no means unmixed, the court is of opinion that the intimation in *State* v. *Davidson*, supra, is that of the juster rule, and the county is held to pay the account herein sued on, which appears to be in no sense a claim accrued to a jailer.

Reversed, with judgment here in accord.